# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID YURMAN ENTERPRISES, LLC, *et al.,* | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-2553 |
| | § | |
| SAM'S EAST, INC., *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Pending before the court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).  After considering the motion, the response, the complaint, and the applicable law, the court is of the opinion that the motion should be DENIED.

## I. BACKGROUND

Plaintiffs David Yurman Enterprises LLC, and David Yurman IP LLC (collectively, "Yurman") brought this case against defendants Sam's East, Inc. and Sam's West, Inc. (collectively, "Sam's Club").  Yurman designs, manufactures and supplies "unique fine jewelry and luxury jewelry designs." Dkt. 1 at 4.  Yurman asserts that it is "the owner of numerous registrations for the famous and highly distinctive trademark DAVID YURMAN, which is widely recognized by consumers as identifying Yurman as the source of the jewelry." *Id.* at 5.  Yurman only sells its jewelry through its own boutiques and authorized retailers who sign an Authorized Retailer Agreement ("Agreement") that "expressly prohibits the transshipment, diversion, or transfer of any Yurman products to any other party." *Id.*  Yurman asserts that Sam's Club was aware of the agreements Yurman has with its authorized retailers prohibiting transfer of its products to other parties because

this requirement is well known in the retail industry, particularly among retailers of jewelry products. *Id.*

According to Yurman, Sam's Club operates as a national "wholesale club." It is undisputed that at least some Sam's Club stores are selling authentic Yurman jewelry products. *Id.* at 6. It is also undisputed that Sam's Club is not a Yurman-authorized retailer of its jewelry. *Id.* Yurman alleges that Sam's Club intentionally sought out, directly or indirectly, and purchased, Yurman jewelry from one or more of Yurman's authorized retailers, even though it knew the retailers were prohibited from engaging in such a transaction. *Id.* After purchasing the jewelry, Yurman alleges that Sam's Club prominently advertised and promoted the jewelry in its stores and on its website, in an effort to drive traffic to its stores. *Id.* In the stores, Yurman asserts, Sam's Club is displaying Yurman products, placards and packaging displaying the Yurman trademark, and "what purport to be Yurman-issued certificates of authenticity." It is undisputed that the products being sold are authentic Yurman products. The problem, Yurman explains, is that Sam's Club's "conduct creates the false impression that Sam's Club is among Yurman's network of authorized retailers, and has caused consumer confusion and disappointment." *Id.* at 7. "For example, Sam's Club has been unable, at the point of sale, to service customers purchasing and/or attempting to purchase DAVID YURMAN jewelry products sold in its stores, as would an authorized Yurman retailer." *Id.*

Yurman brings five claims as a result of the harm it claims it has suffered due to Sam's Club's actions: 1) Trademark infringement in violation of 15 U.S.C. § 1444; 2) False Designation of origin in violation of 15 U.S.C. § 1125(a); 3) Tortious interference with a contract; 4) Unfair Competition; and 5) Injunctive relief from Sam's Club's wrongful conduct. Sam's Club has moved to dismiss these first four claims pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. 10. In short, Sam's Club argues that

Yurman's trademark infringement claim is barred by the "first sale" doctrine, and therefore its false designation of origin claim fails, too.  Sam's Club also argues that Yurman fails to state a claim for tortious interference, and without some independent tort or other illegal conduct, the tort of unfair competition is not a viable claim.  Yurman has timely responded.

## II. Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.  As part of the *Twombly-Iqbal* analysis, the court proceeds in two steps.  First, the court separates legal conclusions from well-pled facts. *Iqbal*, 556 U.S. at 678–79.  Second, the court reviews the well-pled factual allegations, assumes they are true, and then determines whether they "plausibly give rise to an entitlement of relief." *Id.* at 679.  Though a defendant can seek dismissal on an affirmative defense, dismissal will only be granted if the defense is "established by the face of the complaint." *Janvey v. Suarez*, 978 F. Supp. 2d 685, 702 (N.D. Tex. 2013).  Finally, because "a Rule 12(b)(6) motion is viewed with disfavor and rarely granted, a complaint may not be dismissed unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would

3

entitle him to relief. *Leleux v. United States*, 178 F.3d 750, 754 (5th Cir. 1999) (emphasis added) (internal quotations omitted).

### III. LAW AND ANALYSIS

**A.    *Trademark infringement in violation of 15 U.S.C. § 1114***

*1.    Parties' Arguments*

Yurman alleges that it holds several registrations for the trademark David Yurman. Dkt. 1 at 8. Yurman also alleges that the display of the jewelry and its packaging; the prominent placement of placards, certificates, and other Yurman materials; and the prominent advertisement of Yurman products in its stores and on its website to create foot traffic to the stores, all create the false impression that Sam's Club is authorized to sell Yurman products and that its products have been sourced directly from Yurman. *Id.* at 6–9. Yurman alleges that this use of the Yurman trademark is likely to cause confusion or mistake as to an affiliation, connection or association between Yurman and Sam's Club, or as to the origin, sponsorship, or approval of Sam's Club's sale of Yurman jewelry. *Id.* at 8.

Sam's Club argues for dismissal by claiming that the trademark infringement claim is barred by the "first sale" doctrine. More specifically, because Sam's Club is reselling genuine goods under the Yurman mark, it argues, there is no potential for consumers to be confused that the mark owner is the source of the goods. Dkt. 10 at 5.

*2.    Substantive Law*

To prevail on a claim of trademark infringement under the Lanham Act, Yurman must show 1) Yurman possesses a valid mark; and 2) Sam's Club's use of Yurman's trademarks creates a

likelihood of confusion as to source, affiliation, or sponsorship.[1] *Nat'l Bus. Forms &Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th Cir. 2012). "The mere reproduction of a trademark does not constitute trademark infringement if there is no likelihood of confusion." *Nat'l Bus. Forms,* 671 F.3d at 526. (quoting 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:28 (4th ed. 2009)). A "likelihood of confusion" means that confusion is probable. *Id.* And, the court "must consider the marks in the context that a customer perceives them in the marketplace." *Id.* (quoting *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir.2004)). This includes how the mark is presented in advertisements, such as, for example, whether it is the only mark on the advertisement or one of many marks on an advertisement. *Fetzer*, 381 F.3d at 485–86. The "[p]rominent and pervasive use of a mark will suggest affiliation," but "mere reference to a marked product will not." *Nat'l Bus. Forms,* 671 F.3d at 526.

The court also reviews the "first sale rule," an argument raised by Sam's Club for why plaintiffs have not pled a claim upon which relief can be granted. Under the rule "a distributor who resells trademarked goods without change is not liable for trademark infringement." *Mary Kay, Inc. v. Weber*, 301F. Supp. 2d 839, 852 (N.D. Tex. 2009) (internal quotations omitted). However, there are two exceptions to the rule: 1) "[t]he doctrine does not protect alleged infringers who sell trademarked goods that are 'materially' different from those sold by the trademark owner;" and 2) the doctrine will not protected alleged infringers "if they have given off the false impression that they are affiliated with or sponsored by" the trademark owner. *Id.* The second exception is relevant to

---

[1] Though a complete analysis of the likelihood of confusion is unnecessary at this point, courts consider the following nonexhuastive list of "digits of confusion," to assess the likelihood of confusion: (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendan's intent, and (7) any evidence of actual confusion; and (8) the degree of care exercised by potential purchasers. *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008). "No single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors." *Id.*

this case.  Under this rule, an unauthorized dealer may use a mark to advertise or promote truthfully that it sells a certain trademarked product, so long as the advertisement or promotion does not suggest affiliation or endorsement by the mark holder.  *Id.* (quoting *Fetzer*, 381 F.3d at 484).

3.    *Analysis*

Yurman has pled that it possesses a valid mark.  Therefore, the court focuses on whether Yurman has pled sufficient facts to show that the use of the trademark creates a likelihood of confusion about an affiliation between Sam's Club and Yurman.  Yurman has pled that the stores had Yurman products and materials prominently displayed, which suggests the Yurman products were highlighted more than other products.  Further, Yurman has pled that Sam's Club had prominent advertisements of the Yurman products on its website in an effort to drive foot traffic to its stores, which suggests the Yurman jewelry was featured in a way that other jewelry was not.  The context of the use was that Sam's Club was featuring Yurman products more aggressively and prominently than other products to gain more traffic to its stores.  Because the "[p]rominent and pervasive use of a mark will suggest affiliation," Yurman has pled sufficient facts to state a plausible claim for relief at this point based on a likelihood of confusion as to an affiliation between Sam's Club and Yurman.  *Nat'l Bus. Forms,* 671 F.3d at 526.

However, much of Sam's Club's motion hinges on its "first sale rule" defense, arguing that the rule renders Yurman's claim meritless.  But the defense must be apparent on the face of the claim, and the rule does not apply if Sam's Club has given off the false impression that it is affiliated with Yurman.  *Mary Kay, Inc.*, 301 F. Supp. 2d at 852.  Sam's Club relies heavily on *Matrix Essentials*, a Fifth Circuit decision reviewing a district court's summary judgment dismissal of a false designation of origin claim, to say that the mere unauthorized stocking and sale of trademarked

products is not a trademark violation, and therefore Yurman's claim fails. *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., of Lafayette*, 988 F.2d 587, 593 (5th Cir.1993).

As to this defensive argument, the parties do not dispute that the mere unauthorized stocking and sale of trademarked products is not a trademark violation. Yurman, however, alleges more than the mere unauthorized stocking and sale is occurring here. Yurman also alleges prominent and aggressive advertising, including on the Sam's Club's website, and a prominent display of Yurman materials and jewelry within its stores. *Matrix Essentials* anticipates that if more action is taken beyond mere unauthorized stocking and sale of a trademarked product, a claim might survive summary judgment. Of course, this court has already decided that sufficient facts have been pled to support the trademark infringement claim, Sam's Club only relies on *Matrix Essentials*' analysis of a false designation of origin claim to claim a defense applies at this point, and this court is only at the motion to dismiss phase, where "a complaint may not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Leleux*, 178 F.3d at 754.

For all of these reasons, Sam's Club's motion to dismiss the trademark infringement claim is DENIED.

### B.    *False designation of origin in violation of 15 U.S.C. § 1125(a)*

### 1.    *Parties' Arguments*

Yurman reiterates its factual arguments from the infringement claim, asserting that through Sam's Club's actions, it is "creating the false impression that it is authorized to sell DAVID YURMAN-branded products at discounted prices at retail, that its sale of DAVID YURMAN-products has been authorized or sponsored by Yurman, and/or that such DAVID YURMAN-branded products have been sourced directly from Yurman, when in fact none of these things are true."

7

Dkt. 1 at 8–9.  Yurman also asserts that Sam's Club's creation of this false impression has harmed Yurman and its relationships with authorized retailers.  *Id.* at 7.

Sam's Club responds that because false designation of origin claims stand or fall with trademark infringement claims, Yurman's false designation of origin claim fails for the reasons its trademark infringement claim fails.  Dkt. 10 at 7.

　　　　2.　　*Substantive Law*

The Fifth Circuit regularly states the elements of a claim under 15 U.S.C. § 1125 to be: "(1) A false or misleading statement of fact about a product; (2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) The deception is material, in that it is likely to influence the consumer's purchasing decision; (4) The product is in interstate commerce; and (5) The plaintiff has been or is likely to be injured as a result of the statement at issue."  *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).  In summary, "a plaintiff must demonstrate that the commercial advertisement or promotion is either literally false, or that if the advertisement is not literally false, it is likely to mislead and confuse customers."  *Id.* (internal quotations omitted).  The Fifth Circuit has recognized that, while an affirmative misrepresentation would certainly qualify as behavior in violation of section 1125, activity beyond mere unauthorized stocking and sale of goods that serves to actively mislead customers to believe the vendor is part of the trademark holder's authorized sales network could also qualify.  *Matrix*, 988 F.2d at 593.

　　　　3.　　*Analysis*

Sam's Club alleges that the defect in the false designation of origin claim is the same as that for the trademark infringement claim, which was whether confusion or a false impression as to the affiliation between Sam's Club and Yurman had been properly pled.  Sam's Club also asserts that

8

its false designation of origin claim will stand or fall with the infringement claim.  The court has

determined that the trademark infringement claim stands, so Sam's Club's position is also that its

false designation of origin claim stands.  However, even if the court analyzed whether Yurman had

properly pled a likelihood that Sam's Club's actions were likely to mislead and confuse customers,

Yurman would succeed.  Using the same reasoning as with the trademark infringement claim, the

contention of aggressive and prominent displays and advertising in stores and on the website, in an

effort to bring more people into the stores, is sufficient for now to claim that customers are being

misled into thinking Sam's Club is part of Yurman's authorized sales network.  Accordingly, Sam's

Club's motion to dismiss the false designation of origin claim is DENIED.

### C.    *Tortious interference with a contract*

#### 1.    *Parties' Arguments*

Yurman alleges that it holds an Agreement with every one of the authorized retailers of its

products, and these Agreements prohibit the transshipment, diversion or transfer of its products to

any other party. Dkt. 1 at 9.  Yurman alleges that Sam's Club knew about its established contractual

relationships and about the prohibitions the Agreements contain, in part because the Agreements are

well known in the industry.  Further, Yurman claims that, notwithstanding its knowledge of the

Agreements, Sam's Club obtained significant inventories of Yurman products to sell in Sam's Club

stores throughout the United States, including the seven stores in this judicial district.  *Id.* at 6, 10.

Yurman also claims that Sam's Club could not have acquired such large inventories of its products

without having intentionally induced Yurman retailers to breach their Agreements.  *Id.* at 10.  Based

on this, Yurman claims that Sam's Club knowingly, wrongfully, maliciously, intentionally, and

tortiously interfered with Yurman's contractual relationships with authorized retailers by inducing

sales from the authorized retailers.  Yurman claims these actions have caused it various harms.

Sam's Club asserts that Yurman has not sufficiently pled willful and intentional interference of a contract, and that Yurman has not alleged a proper factual basis for concluding that Sam's Club had knowledge of a contractual obligation between Yurman and its dealers, or that any agreement existed at all.

      *2.*    *Substantive Law*

The elements of tortious interference with a contract claim are: 1) the existence of a contract subject to interference; 2) a willful and intentional act of interference; 3) which is the proximate cause of plaintiff's damages; and 4) actual damages or loss. *Farouk Sys., Inc. v. Costco Wholesale Corp.*, 700 F. Supp. 2d 780, 784 (S.D. Tex. 2010). "Liability for intentional interference may not be based on a simple allegation that the defendant performed certain acts; instead, there must be a finding that the defendant performed certain acts with the knowledge or belief that interference with a contract would result." *Id.*

      *3.*    *Analysis*

Yurman has pled each legal element of a tortious interference claim, and has included facts to support its claim.  First, Yurman expressly pleads that it holds specific agreements with its authorized retailers, including the contents of the agreements.  Yurman then pleads that Sam's Club had actual knowledge of these Agreements because the fact that its authorized dealers sign these Agreements is well known among industry jewelry retailers, including Sam's Club.  Even if Sam's Club did not actually know about the agreements originally, Yurman asked Sam's Club to stop its allegedly wrongful conduct of inducing the Yurman retailers to breach their agreements, at which point the Agreements would have been known. Dkt. 1 at 11. Sam's Club refused Yurman's request. *Id.*  As to the element of intentional action, Yurman pled that it would not have been possible to have acquired such a large inventory of merchandise without inducing a breach of contract.  While this

is a circumstantial factual pleading, the court finds that before discovery, these pleadings are sufficient. *See Farouk Systems, Inc. v. Costco Wholesale Corp.*, 700 F. Supp. 2d 780, 784–85 (S.D. Tex. 2010) (court denied motion to dismiss because the pleadings of the elements of the claims were supported by circumstantial factual support and discovery had not yet occurred to allow Farouk to collect more direct evidence).   The court finds that the pleadings are sufficient to defeat a motion to dismiss.   Sam's Club's motion to dismiss for tortious interference is DENIED.

> **D.     Unfair Competition**

The parties agree that the tort of unfair competition requires allegations of an independent tort. Sam's Club argues that because no other claims remain, a claim for unfair competition that is based on the same allegations should be dismissed. Dkt. 10 at 11. The parties also agree that the same facts that support an action for trademark infringement would also support an action for unfair competition. Dkts. 10 at 11, 13 at 17; *Marathon Mfg. Co. v. Enerlight Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985) (per curiam).   Because Yurman has properly pled a trademark infringement claim, and has incorporated all of the allegations from the trademark infringement claim into its unfair competition claim, the court finds that the unfair competition claim should also survive the motion to dismiss.   Accordingly, Sam's Club's motion to dismiss Yurman's unfair competition claim is DENIED.

### IV. CONCLUSION

For the foregoing reasons, Sam's Club's motion to dismiss Yurman's claims is **DENIED**.

It is so **ORDERED**.

Signed at Houston, Texas on April 9, 2015.

_____
Gray H. Miller
United States District Judge